[PHILADELPHIA, JANUARY 12, 1835.]

## WHITE *against* WHITE.

### APPEAL.

Affidavits of jurors are inadmissible to inculpate their fellows or themselves.

It is no objection to an inquisition valuing real estate, that the jurors made separate esti-
mates of value which were added together and the medium value extracted, and
returned as their valuation of the property; this course having been resorted to, not as
decisive of the question, but as an approximation to unanimity.

Nor is the validity of the inquisition affected by the presence of the sheriff with the
inquest, where there did not appear to have been any improper interference with their
duties on his part.

Appeal from the decree of the Orphans' Court of Bucks county,
confirming the valuation and appraisement of the real estate of
*George White* deceased.

In pursuance of a petition presented to the Orphans' Court of
Bucks county, at December term 1832, by *Mary White,* the widow,
and *David* and *Rebecca White,* the children of *George White* deceas-
ed, the Court appointed seven men, named in the petition, to part
and value the real estate of the decedent.  The persons thus ap-
pointed made report of their proceedings to February Term 1833,
in which they valued the estate, consisting of a messuage and tract
of land containing one hundred and twenty-eight acres sixty perches
at seventeen dollars and fifty cents per acre.

Exceptions were filed to this report by *Rebecca White* the daugh-
ter, and on the 13th of March 1833, the Court set it aside.

A second petition was then presented by *David White,* the son,
praying the Court to award an inquest to be held by the sheriff on
the same real estate, which was granted.  In pursuance of this
order the sheriff held an inquest, and to April Term 1833 returned
an inquisition from which it appeared that the jury had valued the
estate at twenty-two dollars and fifty cents an acre.  To this in-
quisition the following exceptions were taken by *David White.*

1. That one of the jury was so much intoxicated as to be dis-
abled from acting with a proper degree of intelligence and reason·

2. That when the jury retired to deliberate and decide upon the
matters laid before them, the sheriff was present, and took part with
the jury in the discussion and decision of the finding and valuation
and division of the estate of the said *George White* deceased.

3. That certain individuals, not interested in the estate were pres-
ent and endeavoured to influence the jury in their decision, espe-
cially the juror who was so much intoxicated, as before mentioned.

4. That the decision of the jury was made by balloting.

5. That the sheriff declared to a person before the meeting of

(White *v.* White.)

the jury that this time it should be valued so high that none of the parties would be able to take it.

Among the depositions returned with the record were those of two of the inquest, one of whom among other things, stated in substance, that one of the jurors was so much intoxicated as to be disqualified for performing his duties properly, while his colleague entirely differed from him, ascribing to sickness, produced by having swallowed a piece of tobacco, what the other attributed to intoxication.

The deposition of *B. Morris* Esq., the sheriff, was also returned, who stated that he was in the room with the jury at the time they agreed upon the valuation : That after dinner they all went into a room and he began to write the inquisition : That after they had agreed on the mode of voting, he gave to each of them a piece of blank paper : That some one asked him for a pencil and the jury said their object in voting was to know each other's minds without talking about it ; that they did not consider the vote binding : That he told the jury they ought to put in what the property was really worth : That he then went on writing the inquisition, and having but one pencil the jury took some time in putting down their votes : That some one collected the papers and the jury asked him to set them down, which he did, but was not able to state the result : That he went on writing the inquisition, and finally they all agreed that twenty-six dollars and twenty-five cents should be the sum : That the highest sum voted for was thirty dollars, and the lowest twenty dollars : That some one having said that the lowest vote was that of *A. Stover*, he denied it ; showed that his vote was for twenty-five dollars, and said that this was his candid honest opinion : That eight of the votes were for twenty-five dollars, two or three for thirty dollars, and one for twenty-seven dollars and fifty cents, or thereabouts : That when he had finished the inquisition he asked the jury if they had agreed ; they said they had, and he then called over their names and they all agreed on twenty-six dollars and twenty-five cents, and signed the inquisition : That when he met the jury they all appeared sober except one ; there was brandy and gin on the table, and they might drink or let it alone : That after they had all start- ed out to view the premises, he thought one of them (whom he nam- ed) had taken too much liquor : That when he handed him the paper he thought he had taken too much liquor, and that his judg- ment might be wild on the subject : That when that juror was call- ed to sign the inquisition he was sitting as if he was asleep, but he got up, went to the table and signed his name : That he (the sheriff) did not say any thing to any person about the value of the property being too high : That he had never, since he had been sheriff, been absent from a jury in taking an inquisition, and that he had never held an inquest in any part of Bucks county, the members of which did not compare their sentiments in the first place by ballotting.

On his cross-examination the deponent stated that he did not go

(White *v.* White.)

out of the room to bring in the juror who was alleged to have been intoxicated, nor did he know that he was out: That his impression from the manner of the juror was that he was drunk and he was afraid he would not know what he was about, yet when he came to sign his name, he was surprised to see it done so well: That he did not know whether the juror put down his number, but there were twelve papers: That he put down the different sums and added them up and divided the sum total by twelve at the request of the jury, who, he believed understood what they were doing, except the one above spoken of, and he did not know that he did not: That there was no person in the room but himself and the jury: That after they had voted they talked on the subject and agreed on twenty-six dollars and twenty-five cents, and that the mode adopted was suggested by the jury or some one of them.

The Orphans' Court confirmed the inquisition, and *David White* appealed from their decree.

*Ross,* for the appellant, cited *Case* of *Bryson's Road,* 2 *Penn. R.* 207. *Rex* v. *Rex,* 3 *Serg. & Rawle,* 533. *Zuber* v. *Geigar,* 2 *Yeates,* 522. 3 *Caines,* 57. 15 *John.* 87.

*Porter,* contra, referred to *Cowperthwaite* v. *Jones,* 2 *Dall.* 55.

The opinion of the court was delivered by

GIBSON, C. J.—It is settled by *Cluggage* v. *Swan,* 4 *Binney,* 150, and an unbroken current of modern decisions, that affidavits of jurors are inadmissible to inculpate their fellows or themselves. The matter here, then, stands on the testimony of the sheriff alone; and the charge of intoxication is not so clearly proved by it as to call for a new inquest. He speaks of an impression from the looks of one of the jurors that he was drunk, which seems to have been effaced by the promptness and self-possession evinced by him when called on to act. Its accuracy is certainly not strengthened by the circumstances; and nothing is more deceptive than appearances. A case therefore is not made out, to overturn the inquisition on that ground; and the other principal exception—that the decision was made by ballot, is not better founded. It satisfactorily appears that recourse was had to a medium value extracted from the separate estimates of all the jurors, not as decisive of the question but as an approximation to unanimity. There was no agreement to stand to the result; and the sum produced was adopted as the ratio but on further reflection and consultation. Every assessment of value necessarily involves a compromise of opinion, and a juror may therefore yield his judgment to that of the majority without compromising his principles, because the attainment of the unanimity which the law requires, would seldom be had without it. A measure therefore to sound the general tone, without giving a pledge to conform to it, is always lawful and often expedient. As to the presence of the sheriff at the

consultation of the inquest, it is sufficient to say that it is in conformity to the practice in every part of the state; and that it does not seem to have been attended with an improper interference of the officer in the present instance. The remaining exceptions are destitute of the colour of proof.

           Appeal dismissed and decree affirmed.