## Stull v. Stull.

*Statute of limitations — Adverse possession— Ouster—Evidence—Eject-ment.*

Where one heir is claiming title to land by adverse possession as against his co-heirs, he must show not only continuous, exclusive, adverse and hostile possession, but also an ouster of the co-heirs. Evidence that he bought the interest of some of the heirs, and that in partition proceedings instituted by himself he omitted the property which he claimed to hold adversely, is admissible on the subject of possession and ouster.

*Jurors—Improper conduct—Evidence.*

The testimony and declarations of jurors that they arrived at a verdict by lottery are inadmissible on a motion for a new trial.

Argued Oct. 10, 1899. Appeal, No. 123, Oct. T., 1899, by defendant, from judgment of C. P. Cambria Co., June T., 1897, No. 422, on verdict for plaintiffs in case of John F. Stull et al. v. J. W. M. Stull et al. Before STERRETT, C. J., GREEN, McCOLLUM, MITCHELL, FELL and BROWN, JJ. Affirmed.

Ejectment for land in Conemaugh township. Before BARK-ER, P. J.

The facts appear by the charge of the court which was as follows:

You have learned from the facts in this case that Jacob R. Stull, Jr., died in 1832, leaving some real estate and eleven heirs; and that the plaintiffs in this case are six of these heirs (either original heirs or the descendants of some of them), and that J. W. M. Stull, one of the defendants in this case, is in possession of a piece of land which Jacob Stull, Jr., owned in his lifetime; and that these six heirs brought this suit against him to obtain possession. They claim that they are entitled to a verdict which would entitle them to possession of six elevenths, that is, the shares of six out of the eleven heirs.

J. W. M. Stull, one of the defendants, who was also one of the heirs of Jacob Stull, Jr., does not claim to have any deed from these six heirs; but he claims title by virtue of the statute of limitations, that is, he says that he has had possession of this land, a possession of such a character, for such a number

of years, that under the law he is still entitled to retain posses-
sion.

Now, it is not necessary for me to explain to you what is
meant by the statute of limitations. It has been in force in
this country and in England, whence we got our laws, for many
years; and it is a rule of law that is enforced for the purpose
of quieting titles; and it means simply this, that while ordi-
narily a deed or grant is evidence of title to land in a party,
where he has had open, notorious, exclusive, hostile and adverse
possession of a piece of land for twenty-one years, the law pre-
sumes that he has a deed. Now, that is what is meant by the
statute of limitations, that where a man has had possession of
a piece of land of that character for that length of time, the
law presumes that he has a deed; and if he produce proof of
that kind, his title is just as good as though he produce a deed.
And, as we have already said the reason of this is that titles
may be secure. Ordinarily, then, that is the rule of law, that
where a defendant in an action of ejectment produces testimony
of that kind, he has made out the possession and the title; but
where the controversy is between two heirs of a common an-
cestor, as in this case, the law requires something more of the
one who relies on the statute of limitations. The law requires
of him to prove, in addition to the facts I have mentioned, an
ouster—that is the legal term used—and it simply means that he
has put the other tenant out. Where a man dies seized of real
estate and one of his heirs remains in possession of that real
estate, the presumption is he is not only holding it for himself
but for the other heirs; or where he is found afterwards in
possession of that piece of real estate, the law presumes he is
holding it for the other heirs; therefore, when he shows he has
had possession for twenty-one years, his title is not made out,
because of that presumption; and he must go further and show
that he has put the other heir out and kept him out; and if he
shows that, then his title is just as good as it would be by prov-
ing the other facts as between himself and a stranger, because
the law presumes he has a deed from that other heir.

We have stated the law will presume a deed from certain
facts and circumstances; and so an ouster will not have to be
proven where, for instance—applying the principle to this case
—if Jacob R. Stull had kept his coheirs off this land, that

would be sufficient. We have already said to you that the law will presume a deed after twenty-one years' possession; and so the jury may prove an ouster by certain facts and circumstances. When a person does not produce a deed, but produces the facts and circumstances that I have mentioned to you, that is, that he has been in the open, notorious, hostile, adverse and continuous possession of the land for a period of twenty-one years, the law presumes that he has a deed. So where one heir has set up a title against the other heir, he does not have to prove the actual putting out of the other heir. If he can produce such facts as will warrant the jury in believing that the other heir has been put out and kept out, that is sufficient.

The defendants here allege that they have shown that Jacob R. Stull had open, notorious, hostile, adverse and continuous possession of this piece of land for upwards of twenty-one years; and that, during that time, he had possession of all of it, and that he had all the profits of the land during that time, and that that is sufficient from which the jury may infer an ouster, that is that he has put the other heirs out and kept them out.

Now, when this question comes up in a case of this kind, it is very seldom that the facts are sufficient to warrant the court in determining it as a question of law, because it is not a legal presumption, it is a presumption of fact; and notwithstanding these facts may be shown, yet there may be other facts in the case, which, taken with the ones we have already mentioned, will cause the jury to say that the possession was not adverse, so that it is purely a question for the jury to say, in a case of this kind, whether the possession of Jacob R. Stull was adverse and hostile to the other heirs. [And there are many facts and circumstances in this case which, it is argued by the plaintiffs' counsel, rebut the presumption that arises from the proof that they have given;] [5] and there are many facts that are argued by the defendants' counsel corroborating their possession and showing that the possession was of the character required by law.

Now, we will not renew these facts, because they have been ably discussed by the counsel on both sides, but we will call your attention to one or two of them. The first thing the defendant must prove is that his possession was open and notorious, that is, that it was open and of such a character that it be-

came notorious in the neighborhood.  He must show that it was hostile and adverse to these other heirs, that is, he must produce such a state of facts as to warrant you in saying that he was holding it against these other heirs, and it must be continuous, for a period of twenty-one years.  And then there must be possession of the whole land, and the receipt of the profits of the land, such a course of conduct all through as would indicate that he was holding it against the other heirs.

Now, the defendant has offered in evidence here the proceedings in partition instituted in 1859, and he has asked us to say to you and he argues that that is proof that he was holding this land adversely to the other heirs, that otherwise it would have been included in the partition proceedings.  You understand that where a man dies owning several tracts of land, or one large tract, one of the heirs may come and ask to have it divided among the heirs.  Jacob R. Stull did this, and did not include in his petition this particular piece of land, and Mr. Ruppell argues that that is sufficient to convince you that Jacob R. Stull was, at that time, holding this piece of land adversely to the other heirs, that otherwise they would have said that piece of land must come in also.

And he has argued also that the draft shown of this sawmill property, with the name of Jacob R. Stull, indicated that it was recognized as his land.  This is some evidence in the case for your consideration, along with the other evidence, and you will bear in mind that this petition was presented by Jacob R. Stull himself, and that it was by his act that it was left out of the partition.  You will bear in mind that it was about the time when the proceedings in partition are shown to have commenced, in May, and bear in mind the arguments of counsel on both sides in relation to that item of testimony.  It is one of the circumstances in the case which you may bring to bear in determining whether or not the holding by Jacob R. Stull was adverse to the other heirs.  Was he holding it against their rights?  And so of the assessments and payment of taxes.  I do not need to comment on that.  You have heard the arguments of counsel on both sides, and it is one of the matters you can consider in determining this question.

I do not recollect any other particular items of the testimony that it seems to us we can aid you by discussing.  You will

bear in mind this fact, that if the defendant shows that Jacob R. Stull was in the open, notorious, hostile, adverse and continuous possession of this tract of land for a period of upwards of twenty-one years, that he was in the possession of the whole of it, that he received all of the profits of the land during that time, that is sufficient from which you may infer that the other heirs may have been put out, that there was an ouster. [But you must consider, in connection with that, all the other testimony in the case that will tend to rebut that presumption. It is a presumption, that is, you may presume from these facts, that the other heirs have been put out. Then you can take into consideration all the other facts that rebut that presumption, and, having weighed the testimony on the one side and the other, determine on which side the weight of the testimony lies.] [6]

[Now, it is argued upon the part of the plaintiff that the fact that this defendant purchased the interests of four of the other heirs in this land is sufficient of itself from which you may hold that he was not holding it adversely to the other heirs. We cannot say, as a matter of law, as we have been asked to do, that that of itself is sufficient, but it is one strong element in the case. You will weigh the evidence and consider the arguments of counsel on both sides and determine whether or not he was holding it adversely to the other heirs. There must have been an intention on his part to hold it against the other heirs of Jacob Stull, Jr. We cannot say that this by itself, standing alone, should convince you that Jacob R. Stull's possession was not adverse, because you have many other facts and circumstances in the case; and just like the proceedings in partition on the one side of the case, and just like the cutting and sale of timber and all those other matters, the fact of his having obtained deeds from four of the heirs is a strong circumstance in the case to aid you in determining the question as to whether he was holding this land during the time he held it, as against the heirs of Jacob Stull, Jr.] [7]

Verdict and judgment for plaintiffs. Defendants appealed.

On a motion for a new trial BARKER, P. J., filed the following opinion.

Several reasons have been assigned in support of the above

stated motion, but the one on which defendants' counsel chiefly relies was filed several weeks after the trial and it is as follows: " The jurors improperly arrived at a verdict by lottery or chance, as set forth in the depositions this day taken." In support of this allegation the depositions of some of the jurors were taken, under objections made by plaintiffs' counsel at the time, and when the depositions were offered in evidence at the hearing these objections were renewed and the admission of the depositions most earnestly resisted.

The question of the admissibility of the testimony of jurors after a verdict tending to invalidate or impeach it has been much discussed by law writers and frequently considered by the courts, and, although different conclusions have been arrived at in different jurisdictions, and apparently by different judges in the same jurisdiction, the weight of authority, as found in the best considered cases in the books, is against its admissibility, and the settled course in England and in nearly all the states is to reject it. The question was passed upon at a very early day by the Supreme Court of this state in Cluggage v. Swan, 4 Binney, 150, where the allegation was the same as in this case. The depositions were rejected, and we regard the ruling in that case as binding on us, not only because it has not been overruled or even questioned in any subsequent decision, but because of the careful consideration given the question by Justice YEATES and the soundness and convincing character of the reasoning employed by him.

We cannot agree with the learned counsel for the defendants that this is a matter resting on the legal discretion of the trial judge, as is the case generally for motion for new trials. There is a rule of evidence involved, and the testimony is either admissible or it is inadmissible; if admissible, it must be read to determine whether the allegation be true or not; if inadmissible, that question cannot be considered, and the reason assigning misconduct or improper methods in arriving at a verdict must fall because not sustained by proof. In this case there is no proof excepting that obtained through the instrumentality of the jurors. Obviously if the direct testimony of a juror as to what took place in the jury room is inadmissible, his declarations, as testified to by another witness, as to such matters, are inadmissible: Warren v. Spencer Water Co., 143 Mass. 155.

Of course we could exercise the "legal discretion" invoked in this case and grant a new trial without assigning any reason, and thus escape the responsibility of deciding the important question involved, but having no fault to find with the verdict ourself, and finding no sufficient reason for disturbing it among the others assigned, we cannot compromise the matter in our own mind by a course of reasoning that suggests to us that although no legal proof has been furnished we believe the verdict was arrived at by improper means and therefore we will grant a new trial. We cannot thus easily overcome the repugnance we have against permitting the secrets of the jury room to be inquired into through the instrumentality of the jury, a repugnance based upon reason and what we regard as sound policy as well as upon authority.

The reasons for the exclusion of testimony such as is now under consideration have been so often given that we need not repeat them here. It has been suggested that it would be unsafe to adopt a stringent and rigid rule in this behalf, but we would regard it as far more dangerous to relax the rule in particular cases, or open the door wide enough to leave the matter to the discretion of the trial judge, and thus allow the rights of parties that have been settled by a verdict to remain subject to jeopardy at the hands of one or more jurors who have joined in the official act of the jury, as a body, in announcing the result solemnly to the court after they have deliberated on the matter under the injunction of the judge as to the only proper way to arrive at a verdict. Moreover, in our opinion, a relaxation of the rule not only involves the safety of parties to the suit, but the integrity and honesty of the jurors as well, subjecting them to the importunities and inquiries of interested parties after verdict, and involving them in controversies between themselves as to what actually occurred in the jury room, with a possible tendency to perjury. If the testimony of all the jurors is admissible to invalidate their verdict, then the testimony of one juror is; and if he be believed, that there was such misconduct as ought to invalidate it, then one juror can set aside the solemn act of the twelve and bring reproach upon the other eleven. If the testimony of jurors is admissible to show gross misconduct in the jury room, it is admissible to show trifling misconduct, and the reasons generally on which

the verdict was based, and there would be absolutely no stability to verdicts.

We refer to 1 Greenleaf on Evidence (15th ed.), sec. 252*a*, and note *a* same page, Willing v. Swasey, 1 Browne's Rep. 123, and Smalley v. Morris, 157 Pa. 349, for sound reasons against any relaxation of the rule invoked in this case as to the admissibility of the testimony of jurors to affect their verdict.

The rule adhered to in Cluggage v. Swan, supra, and followed by us in this case, must not be confused with the rule announced in Ritchie v. Holbrooke, 7 S. & R. 458, to the effect that the affidavit of a juror will be received to show the misconduct of a party to the suit. There is no conflict between these two cases, as will readily be seen by comparing them. The distinction between the two classes of cases is well drawn in Heffron v. Gallupe, 55 Me. 563, where it is stated that " The testimony of a juror is admissible to facts touching his own conduct or acts when separated from his fellows, or the acts or declarations of other persons with or to him, but inadmissible as to what transpired in the deliberations of the jury acting as an organized body presided over by their foreman and performing their official duty."

Before leaving this branch of the case we desire to refer to the case of Commonwealth v. Johnson, 5 Pa. C. C. R. 236, cited by defendants' counsel. That was a homicide case in which the verdict was murder in the first degree, and the learned judge was " satisfied in his conscience" that a newspaper article reached the jury, and that it was improper for them to see it, and he therefore granted a new trial. We would have done the same, for, although the rule is probably the same in criminal as in civil cases, there are considerations tending to a relaxation of the rule in the former class of cases not found in the latter, and it should be observed that the quotation from Wharton found in Judge Mayer's opinion, relates to evidence in criminal cases, although he cites as authority the decision of the courts in civil cases, among them some California cases based on a statute of that state permitting the testimony of jurors to be introduced.

Some of the other reasons have been referred to by defendants' counsel in their brief of argument, and we have carefully

considered them all.  The seventh alleges misconduct on the part of a party in interest, but the allegations are not sustained by proof satisfactory to us.  We are not satisfied in our conscience that there was any improper communication between the party named and any juror, and therefore cannot sustain this reason.  The other reasons relate to the admission or rejection of evidence and the instructions to the jury.  We have carefully read over the portions of the charge and testimony to which they refer, and are not convinced of any such error as would warrant us in interfering with the verdict.  The case was carefully tried, the evidence was such that it was clearly for the jury to decide as between the plaintiffs and defendants, and as we have already suggested, we have no fault to find with the verdict, nor can we see wherein it was contrary to the weight of the evidence or the charge of the court.

And now, April 17, 1899, motion for new trial overruled.

*Errors assigned* among others were (5–7) portions of charge as above, quoting them.

*W. H. Ruppel*, with him *A. H. Coffroth* and *John E. Gasteiger*, for appellants.—Defendants proved by a number of witnesses that several persons had resided on the land in dispute as tenants under Jacob R. Stull; that they contracted with him for possession of the premises and accounted to him for the rents. Some of these tenants were dead, and defendants proposed to prove their declarations made on the premises while they were living there as to the character of their tenancy.  This offer was overruled by the court, which we think was an error and in support of our view we cite Union Canal Co. v. Lloyd, 4 W. & S. 400, and Woodway v. Rowe, 1 Ad. & El. 114; 28 E. C. L. Rep. 52.

Having established the fact that Jacob R. Stull was in possession of the premises at the time, we think that it was competent for us to prove his declarations made on the premises, under the circumstances : Rice on Evidence, 424.

The evidence was sufficient to show an actual ouster of the cotenants : Frederick v. Gray, 10 S. & R. 182; Lodge v. Patterson, 3 W. 74; Mehaffey v. Dobbs, 9 W. 363; Phillips v. Gregg, 10 W. 158; Bolton v. Hamilton, 2 W. & S. 294; Key-

ser v. Evans, 30 Pa. 507; Dikeman v. Parrish, 6 Pa. 210; Forward v. Dietz, 32 Pa. 69; Susquehanna, etc., Coal Co. v. Quick, 61 Pa. 328.

This court should reverse the court below for refusing to grant a new trial: Com. v. Johnson, 5 Pa. C. C. R. 236; Ritchie v. Holbrooke, 7 S. & R. 458; Elkins v. Gaff, 2 W. N. C. 586; Com. v. Martin, 16 Pa. C. C. R. 140.

*Alvin Evans*, with him *J. W. Leech*, for appellee.—A cross-examination should be confined to matters in relation to which the witness has been examined, or to such questions as may tend to show his bias or interest: Fulton v. Central Bank of Pittsburg, 92 Pa. 112; Monongahela Water Co. v. Stewartson, 96 Pa. 436; Bohan v. Avoca Borough, 154 Pa. 404.

The declarations of a decedent against his interest are competent evidence: Brown v. Bank of Chambersburg, 3 Pa. 199.

Declarations by a defendant in ejectment, relative to the facts and object of his taking possession, are only competent because and when they are contemporaneous with the act itself, and so immediately connected with it as to illustrate its true character with reasonable certainty: Hood v. Hood, 2 Grant, 229; Cadwalader v. App, 81 Pa. 211; Phillips v. Gregg, 10 Watts, 158.

It is held that if there is any evidence which alone would justify an inference of the disputed facts on which a right to recover depends, it must according to the well-settled rule, be submitted to the jury: Lerch v. Bard, 153 Pa. 573; Bucklin v. Davidson, 155 Pa. 362; Gates v. Watt, 127 Pa. 20.

The legal presumption is that the possession of one tenant in common inures to the benefit of his cotenants, but as to strangers the rule is different: Forward v. Dietz, 32 Pa. 69; Bannon v. Brandon, 34 Pa. 267; Bennett v. Bullock, 35 Pa. 364; Tullock v. Worrall, 49 Pa. 133.

The testimony of jurors is inadmissible for the purpose of invalidating or impeaching their verdict: Cluggage v. Swan, 4 Binn. 150; White v. White, 5 Rawle, 63; Wharton on Evidence (2d ed.), sec. 601; Ring v. Baker, 4 W. N. C. 185; Tewksberry & Fenner v. Boyle, 5 Kulp, 496; Com. v. Miller, 3 Lanc. 175; Hutchinson v. Sandt, 4 Rawle, 239; Willing v. Swasey, 1 Browne's Rep. 123; McMicken v. Com., 58 Pa. 215; Shomo

v. Zeigler, 10 Phila. 611; Norton v. Breitenbach, 1 Pearson, 467; Smalley v. Morris, 157 Pa. 349.

OPINION BY MR. JUSTICE McCOLLUM, October 8, 1900:

The plaintiffs claimed title to an undivided six elevenths of the land in dispute. That they were heirs of Jacob Stull, Jr., who died seized of said land was admitted. The defendants claimed title to the land as heirs of Jacob R. Stull who was one of the heirs of Jacob Stull, Jr., and who the defendants allege acquired title to it by a continuous, exclusive, adverse and hostile possession of it for more than forty years. It may properly be stated here that four of the heirs of Jacob Stull, Jr., sold and conveyed their interest in the land to Jacob R. Stull, and that six of the heirs of Jacob Stull, Jr., never sold or surrendered their interest in it to him. The heirs who retained their interest in the land were not presumed to have lost it. They were tenants in common with Jacob R. Stull, and it devolved upon the defendants who claimed title under him to show such a possession and use of the land by their ancestor as operated as an ouster of his cotenants.

On the trial of the case the jury returned a verdict in favor of the plaintiffs for six elevenths of the tract in dispute. As the motion of the defendants for a new trial was refused by the court below an appeal was taken to this court.

The defendants have filed in this court thirteen assignments of error. The first assignment relates to the cross-examination of Sylvester Paul, a witness for the defendants and the second, third and fourth relate to the exclusion of evidence. In these assignments we find no error prejudicial to any right of the defendants.

The fifth, sixth and seventh assignments complain of or criticise the excerpts selected from the general charge, which in its entirety is unobjectionable. We therefore dismiss these assignments without further comment. The answer to the plaintiff's second and fourth points and to the defendants' fourth, fifth and sixth points are complained of in the eighth, ninth, tenth, eleventh and twelfth assignments. An examination of each of them separately has not satisfied us of error in either.

The motion for a new trial on the ground of the alleged misconduct of the jury was carefully considered by the learned

judge of the court below, and finally dismissed by him in a clear and convincing opinion in accord with our own cases and the decisions in other states.

Judgment affirmed.