## Commonwealth *v.* Bergdoll, Appellant.

*Criminal law—Assault and battery—Aggravated assault and battery—Indictment—Verdict—Evidence—New trial.*

1. A count for aggravated assault and battery will support a verdict of guilty of assault and battery, and also a verdict of guilty of assault.

2. A verdict of guilty of assault will be sustained although the evidence may show that the defendant was also guilty of battery. In such a case the court will not examine into the process of reasoning which led the jury to conclude that the defendant was guilty of the assault, but not guilty of the battery.

3. A verdict of guilty of assault in operating an automobile will be sustained where the evidence shows that the machine was run with reckless speed on the wrong side of the highway, and in such a manner that it zigzagged from side to side.

4. On the trial of an indictment for assault and battery in recklessly operating an automobile so that it collided with another machine, a witness who came upon the scene of the accident one hour after it occurred, may describe the conditions which he saw upon the ground, and if no objection is taken at the trial to such testimony objection to it will not be considered on a motion for a new trial.

5. A verdict of guilty of assault will not be set aside merely because one of the jurors believed that such a verdict carried a fine only.

6. A juror's testimony is not admissible as to what transpired in the deliberation of the jury acting as an organized body in the performance of its official duty.

Argued May 12, 1913. Appeal, No. 85, Oct. T., 1913, by defendant, from judgment of Q. S. Mont-

gomery Co., March T., 1913, No. 21, on verdict of guilty in case of Commonwealth v. Grover C. Bergdoll. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Indictment for assault and battery.   Before SWARTZ, P. J.

At the trial the jury returned a verdict of guilty of assault.

On a rule for a new trial SWARTZ, P. J., filed the following opinion:

The first count in the indictment charged an aggravated assault and battery, and the second count an assault and battery.   The commonwealth went to trial on the count charging an aggravated assault and battery. It is alleged that the defendant committed the offense with an automobile.   He and the injured person were going in opposite directions in their respective cars. There were five persons in the defendant's car, and Walter B. McIlvaine and Sumner Rulon-Miller occupied the other car.   There was a collision, and all seven persons were more or less injured.   The defendant drove his car, and from the wreckage, described by the witnesses, it is surprising that some of the occupants in the two cars were not killed.   The jury rendered a verdict of guilty of an assault upon Mr. McIlvaine.

It is earnestly contended, by counsel for the defendant, that the verdict is illogical and inconsistent with the testimony, and, therefore, should not be allowed to stand.

It is admitted that a count for aggravated assault and battery will support a verdict of guilty of assault and battery.   And it must follow that, under such count, a verdict of guilty of assault will be sustained, because an assault is included and involved in the offense of assault and battery.   The jury may convict of any offense that is a constituent of the crime charged in the

count: Com. v. Arner, 149 Pa. 35; Gorman v. Com., 124 Pa. 536.

But it is argued that the evidence shows that the defendant was guilty of the battery, as well as of the assault, if he was guilty of anything. The evidence is for the jury, and if they find, under the testimony, that the defendant was not responsible for the battery, but was guilty of an assault, what right have we to say that their verdict should be set aside? The jury finds the facts, and the court has no right under our system of jury trial, to take this power away from them. If the jury finds a more serious degree of guilt than is supported by the evidence, the court will interfere and protect the rights of the accused, but if the jury, under their oaths, finds a lower degree of guilt than is indicated by the evidence, the verdict must stand. Our inquiry should be—was there evidence to support the charge of which the defendant was convicted? If there was, then punishment should follow. In this case there was abundant evidence to show an assault. If the same evidence just as conclusively disclosed an unlawful battery, we do not see how the defendant has any standing to complain because the jury failed to do its full duty. Suppose we should grant a new trial, what would follow? We could not allow the jury on a re-trial, to convict the defendant of a battery, because of that charge he was acquitted. The battery was an included offense and the verdict rendered is a bar to any prosecution for the included misdemeanor: Com. v. Arner, 149 Pa. 35. If the contention of counsel is correct, then, at the new trial, we could not allow the jury to convict of the assault, because such verdict, under the evidence, would be illogical and inconsistent, and could not stand. It would follow, that the defendant must escape altogether, although a jury had found that he committed a crime which the evidence showed was in fact perpetrated.

The fallacy of the defendant's argument is found in

the assumption that there can be no guilt of an assault because there was no guilt of a battery according to the verdict of the jury.  There is no necessary inconsistency in such finding by the jury.  An assault is not always followed by a battery.  How the jury made the discrimination may be a difficult problem to us, but it is not unusual to find these problems when we attempt to fathom the process or reasoning whereby a jury reached the verdict.  There is a theory, more or less plausible, under the defendant's evidence, which may have induced the verdict.  If Mr. McIlvaine's car was on the right side of the highway, where it ought to have been, and the defendant's car was on the same side, where it should not have been, when it was about to pass the McIlvaine car, then the jury could well find that there was an assault, if the defendant, with criminal negligence, was about to run directly into the McIlvaine car.  So long as there was no collision there was no battery.  Now the jury may have found that the defendant would have escaped from the consequences of his reckless conduct, if Mr. McIlvaine, in the sudden emergency that confronted him through no fault of his own, had managed his car differently.  To the legal mind this might not excuse the defendant from the consequences of his criminal acts, but the jurors are the judges of the law, as well as the facts, and if they concluded, under the law, that the defendant was guilty of the assault but not responsible for the collision, it is not clear to us how the court can overrule their conclusion.  At least, the granting of a new trial would be improper remedy for such error.  Their mistake would inure to the benefit of the defendant.  But, as already stated, it is not for us to attempt to explain by what process of reasoning under the facts found by them, they concluded that the defendant was guilty of the assault, but not guilty of the battery.

Com. v. Williamson, 19 Phila. 566, cited by counsel, is not in point, when carefully examined.  The court

was evidently of opinion that the conviction was not supported by the evidence, and that, therefore, a new trial should be granted. The court said, if there was no aggravated assault and battery, then there could be no assault and battery. Even if the court, in that case, had the right to take from the jury the province to pass upon the grade of the offense, the decision is no authority for holding that the accused cannot be guilty of an assault if he is or is not guilty of a battery. No doubt this was a compromise verdict. If the court must set aside all such verdicts, the administration of justice, by jury trials, would be seriously hampered.

We cannot sustain the second exception. The verdict was not against the evidence.

There was evidence of reckless speed, and reckless running of the car, so that it zigzagged along the highway, from side to side. There was also evidence that the defendant ran his car on the wrong side of the street, as he approached the McIlvaine car. The same evidence would support a finding that the defendant was running at great speed and collided with the McIlvaine car when the latter was at the right side of the highway close to the gutter.

The accident occurred near midnight **on** a wide thoroughfare, and could not well arise except through gross negligence. There was competent evidence to show excessive speed. Mr. McIlvaine first saw the defendant's car when it was about 600 feet away from him. He had the opportunity to watch it approach while it moved 450 feet to the point of the accident. From the observations he made, the time it took the car to reach the point of collision, and his experience in running automobiles, he was qualified to give the rate of speed. "An intelligent person having a knowledge of time and distance is capable of forming an opinion as to the speed of a passing railroad train, a street car or an automobile:" Dugan v. Arthurs, 230 Pa. 299.

The demolishing of the defendant's car, the distance it ran after the collision, and the fact that when the car was stopped it pointed to the west, although the defendant, at the time of the accident, was journeying to the east, are all factors which throw light upon the question of speed.

The complaint, as to the testimony received from Captain Donaghy, the chief of police, is not well founded.

The accident occurred about midnight, and he came upon the scene one hour later. He described the conditions upon the ground and also the wrecked condition of the defendant's car. He stated that one wheel, on the left side of the car, was bent almost double, that the tire and iron frame were off the car, and that the spokes of this wheel were broken. He also added that the other wheel "was missing altogether." This evidence was not objected to, nor was there any motion to strike it from the record. When, later on, an effort was made to show where the missing wheel was found, next morning, about six o'clock, we sustained an objection upon the ground that the time was too remote from the happening of the accident. The captain was recalled, but we did not allow him to testify where the wheel was found next morning, at six o'clock. He repeated his evidence about the broken wheel and that one wheel was missing at one o'clock in the morning. His evidence was then objected to, although not a word was added to what he had already testified to and without any objection whatever.

We think the objection was, in fact, directed against any admission of evidence as to the finding of the missing wheel, next morning. But if it was directed to the admission of evidence, as to the conditions upon the ground at one o'clock, the objection was not well founded. First, because it was competent. There were witnesses upon the scene, from the time the accident happened to the time Captain Donaghy appeared, and these witnesses gave the history of the occurrences after the

accident to the period when the captain examined the grounds. The time was not too remote from the accident. If so, there would be few cases where the jury could be furnished with any evidence relating to the condition, results or consequences of an accident. Secondly, the testimony was already in evidence without objection, and, therefore, at least with the tacit admission of defendant's counsel that it was competent.

It is also contended that some of the jurors believed that under a verdict of "simple assault" the punishment could not extend beyond a fine.

The verdict rendered was "not guilty of aggravated assault and battery but guilty of assault." We do not know of any difference between "simple assault" and "assault," but if there is any difference the record discloses just what the verdict was, as taken in open court. We were careful to interrogate the jurors and the record shows the true facts.

Jurors have no right to pass upon the punishment of the accused. Their duty is to determine the question of guilt or innocence of the accused and leave the punishment to the court.

If the court must inquire into the motives or reasons that controlled each juror in rendering his verdict, it is high time to abandon the jury system. Jurors will talk, and when counsel for the convicted defendant seek consolation, they can usually find it by interrogating some accommodating or weak-kneed juror.

Two affidavits were presented, made by one of the jurors, and a third was made by a member of the bar who heard this juror make a statement. It is claimed that these affidavits show that the jurors took into consideration a matter that was not in evidence, and that they were influenced by it in rendering their verdict.

We did not allow these ex parte affidavits to be filed. If a juror may impeach his verdict by this method, then a trial is of little consequence, and few verdicts could stand. The court would be kept busy in retry-

ing the same case. Out of a panel of twelve men any persistent attorney is likely to find one juror who can give some plausible irrelevant matter as an excuse for not finding a verdict as counsel would prefer to have it.

These affidavits give a good illustration of the unreliable character of such ex parte declarations. In the first affidavit the juror asserts positively that he voted for conviction because he was told such verdict would not support a sentence of imprisonment, but only a fine. In his next affidavit he swears that he voted for conviction only because one of the twelve jurors impaneled in the case with him stated that he had been called and acted as a juror in a previous prosecution of the defendant. The affidavit does not even state that he was informed whether the defendant was acquitted or found guilty at the trial. It is true, he says, he relied upon the juror's experience when he was told that a verdict of guilty of assault meant a fine only. Can any reliable inference be drawn from these conflicting affidavits? It is not even safe to conclude that the juror was influenced by a belief that the sentence would be restricted to a fine. The other jurors should not be condemned by an ex parte statement of one of their number. As already stated, the juror overstepped his province, if he allowed the matter of sentence to intervene instead of confining his inquiry to the guilt or innocence of the accused. That the jury should not consider the punishment is clearly shown in Com. v. Switzer, 134 Pa. 383.

That jurors will seek comfort, at times, in assuming that the sentence may not be severe, when they agree to a verdict of guilty, is no doubt true, but where the charge eliminates this question from their consideration, we do not see how the court can interfere with the verdict. We were careful to say to the jury, and repeated the instruction, "that they must not be influenced or controlled by anything they read or heard about the case, but that they must be guided and controlled by

the law and by the evidence that was given from the witness stand." "You will not be influenced by anything outside of the case, but judge the case by the evidence from the witness stand."

But if these affidavits show any misconduct on the part of the jury, which we do not admit, they are not properly before us for our consideration.

The rule of law, that one juror, by his deposition, cannot be allowed to impeach the verdict of the jury on the ground that some other juror used an unfair argument before his fellows, is well established. The rule goes so. far, that a juror's testimony is not admissible as to what transpired in the deliberation of the jury acting as an organized body in the performance of its official duty. This rule was announced as early as Chuggage v. Swan, 4 Binney, 150, and clearly reaffirmed as late as Stull v. Stull, 197 Pa. 243. In the latter case the jurors reached a verdict by lottery or chance, but the depositions of the jurors to establish this fact were not admitted to prove the fact. This ruling was affirmed, in the following language: "The motion for a new trial on the alleged misconduct of the jury was carefully considered by the learned judge of the court below, and finally dismissed by him in a clear and convincing opinion in accord with our own cases and the decisions of other states." In Com. v. Reber, 10 Pa. Dist. Rep. 683, a juror was called to show that a fellow juror, during the deliberations, stated that the defendant, some years before, had committed an act similar to that for which he was on trial. The learned judge End-lich, who is presiding so ably for many years in the twenty-third district, excluded the depositions.

It is clearly against public policy to admit such evidence. A relaxation of the rule "would subject the jurors to the importunities and inquiries of interested parties, after the verdict, and involve the jurors in controversies among themselves as to what actually occurred in the jury room, with a possible tendency to perjury."

If there is to be any relaxation of this rule in the trial of criminal cases, we should have something more substantial than the conflicting ex parte affidavits of a single juror. What we said about the affidavits of the juror applies with equal force to the deposition of the attorney. If the testimony of a juror is inadmissible, it follows that his declaration to others cannot be received: Stull v. Stull, 197 Pa. 243.

The defendant had a fair trial. There is no exception to the charge, and we were careful to protect the accused by cautioning the jury, specifically, to apply all the safeguards that should surround a man when he is brought into the criminal court, charged with the perpetration of an offense against the law.

We were careful to exclude from their consideration anything they may have read or heard about the occurrence. We did this advisedly.

And now, April 7, 1913, the reasons for a new trial are dismissed, and the motion for a new trial is overruled. The motion in arrest of judgment, for the reasons given in this opinion, is also overruled.

*Errors assigned* were various rulings and instructions.

*Theo. Lane Bean,* with him *C. S. Sheive,* district attorney, for appellant.

*Rowland C. Evans,* with him *I. G. Forster* and *William A. Gray,* for appellant.

PER CURIAM, May 15, 1913:

After due consideration we are all of opinion that the substantial questions raised by the assignments of error have been correctly and adequately answered in the opinion of the learned trial judge overruling the defendant's motion for a new trial and in arrest of judgment.

The judgment is affirmed upon that opinion.