## Commonwealth v. Miller.

*New trial—Prejudice of juror against prisoner—Testimony of jurors to impeach verdict.*

1. On the trial of an indictment for murder, one of the jurors made a public statement in open court to the trial judge to the effect that he thought the jury would never be able to bring in a verdict because one of their number was personally acquainted with a friend of the deceased. The trial judge, thereupon, cautioned the jury as to their duty under their oaths to try the case impartially and determine the guilt or innocence of the accused in accordance with the evidence, and the jury then retired without objection on the part of defendant's attorney. Twenty-nine hours later they brought in a verdict of guilty of murder in the second degree: New trial refused.

*New trial—Taking chance of verdict.*

2. If defendant's counsel concluded, when the statement concerning the juror was made, that defendant could not have a fair trial, he should have immediately requested the court to discharge the jury; they could not take the chance of a verdict in their favor and keep the motion for a new trial in reserve.

*Depositions and testimony of jurors to impeach verdict.*

3. Upon grounds of public policy, affidavits, depositions or other sworn statements of jurors are inadmissible to impeach their verdict, to explain it, to show upon what ground it was rendered, or to show a mistake in it.

4. The testimony of a juror is admissible to establish facts touching his own conduct when separated from his fellows or the acts or declarations of other persons with him or to him, but inadmissible as to what occurred in the deliberations of the jury acting as an organized body, presided over by their foreman and performing their official duty.

*Evidence—Dying declarations.*

5. Declarations by the deceased as to the manner in which he met his death, made after a statement by him that he thought he was "done for," are admissible as dying declarations.

*Charge of court—Murder—Manslaughter.*

6. On an indictment for murder, the trial judge commits no error in refusing to charge on manslaughter in the absence of evidence which indicates the latter crime.

Murder. O. and T. Phila. Co., Nov. Sess., 1923, No. 277.

*Maurice J. Speiser*, Assistant District Attorney, for Commonwealth.

*Everett A. Schofield* and *Thomas Nardello*, for defendant.

McDEVITT, J., April 5, 1924.—This matter comes before the court on a motion for a new trial, following conviction of the defendant of murder of the second degree. Counsel base their motion principally upon the three following reasons: 1. The statement of one juror that another juror was a friend of a friend of the dead man. 2. The admission of what purported to be a dying declaration. 3. The refusal of the trial judge to charge the jury on manslaughter.

A careful review of the testimony convinces the trial judge that the verdict was just and proper under the circumstances; and that any other verdict, except that of murder of the first degree—of which every necessary element was present—would have shown a wanton disregard by the jurors of the overwhelming weight of the evidence. The jury by their verdict stamped as truthful the testimony given by the Commonwealth's witnesses. The court is now asked to surmise or conjecture that the verdict was the illegitimate product of sinister influences exerted by an alleged prejudiced juror, who took an oath to make a true deliverance between the Commonwealth and the

defendant, but, by unusual powers, coerced or persuaded eleven co-jurors to return a verdict which some would now impeach.

If the first, which is the most important reason assigned by counsel, can be sustained, the entire jury system which, up to the present time has proven the most satisfactory legal achievement of civilization, will be imperiled. If the juror in question was incompetent to serve, the defendant, had she possessed knowledge concerning what is now offered as the reason for disqualification, could have challenged him on his *voir dire.*

The Constitution does not reserve to any defendant the right to challenge a juror. The right is legislative in its origin, and the power resides in the general assembly from time to time to change the method by which jurors are to be selected, in accordance with the dictates of wisdom and experience, just so long as the statutes do not set up a trial body which shall not be "as heretofore" as secured to us in the Bill of Rights.

The dignity of the courts must have its roots in the ability and integrity of the judges who preside therein, and the fearlessness and impartiality with which judges and jurors jointly exercise their powers. If we are to continue to have faith in our jury system, it must abide in the belief that when men of average intelligence and integrity have solemnly sworn to be guided in their deliberations by the evidence produced—and that alone—there will be present sufficient firmness, integrity and stability to prevent their being swerved from their duty. The administration of justice under our form of government is a sacred and solemn duty to be treated seriously and at no time to be tampered with or perverted by sinister or unscrupulous motives. It is our right and privilege to impute honest intentions to men who have taken oaths to perform their duty and to view with caution those who would impeach their own verdict.

It is not the court's duty to attempt to explain by what process of reasoning the jurors reached their conclusion, and it would be establishing a dangerous precedent to attempt to invade the privacy of the jury-room to analyze, criticise or review the deliberations, the standards of measurement or the tests of guilt and innocence adopted by the jurors.

Any relaxation of the rule so firmly established not only involves the safety of parties to the suit, but the integrity and honesty of the jurors as well, subjecting them in civil, as well as criminal, courts to the importunities and inquiries of interested parties after a verdict and involving them in controversies between themselves as to what actually occurred in the jury-room with a possible tendency to perjury.

Jurors should not be intimidated by the fear of subsequent investigation as to their processes of reasoning or their methods of reaching conclusions. Neither should they be swayed by their loose opinions on the subject of punishment or guided by the common error of jurors that punishment is the consequence of their findings of the truth of the facts, instead of its being the consequence of the commission of the crime itself.

The only matter before the court is the following statement of the seventh juror: "We have one juryman in our crew who seems to be somewhat personally acquainted with a friend of the dead man's. Under those circumstances, I do not think we will ever be able to render a verdict."

Judging by the language used, this juror's concern could not possibly have been with the safety of the defendant's case entrusted to him and eleven other jurors, but with the physical inconvenience to which he would be subjected by a continuance of his isolation from the rest of the community during the jury's deliberations upon the case they then had under consideration.

4 D. & C.

The trial judge in his original charge had instructed the jurors concerning their duties, and, in answer to the statement made by juror No. 7, quoted above, the court charged:

"Gentlemen of the Jury: When you were examined individually before you were accepted and sworn as jurors, it was your duty to state at that time if there was any bias for or prejudice against the defendant, or whether there was any other outside interest in this case which would interfere in your returning a true and just verdict according to the evidence and the law.

"You have taken an oath to perform that duty, and your obligation is just as great to the community as is my own. You have sworn to do your duty, and it is your duty as citizens and as men to do your duty, and you will lay aside every element of prejudice against the defendant or sympathy for the dead man, or sympathy for the defendant, or interest in the Commonwealth.

"You are sworn as men. You will lay aside every other outside interest. You will base your conclusion upon the evidence you have heard from that witness-stand. You cannot escape an unpleasant duty by stradling an important question. If you had an interest in this case, it was your duty to the community, your duty to yourselves as men and citizens, to say so and not spend five or six days in what would be a travesty on justice if the friendship with a friend of a friend of the deceased should enter into your deliberations at this time.

"Now, return to your room, take up the evidence, consider the testimony offered by the Commonwealth and that offered by the defence, and absolutely nothing else. Lay aside your prejudice, your sympathy, or your interest, and decide this case upon the evidence as it has been presented and the law that applies as the evidence stands.

"You owe a duty to yourselves, to the defendant and to the Commonwealth. Now discharge that duty as men! Take them back."

At the conclusion of the supplemental charge, no request was made by defendant's counsel, but the jurors renewed their deliberations and twenty-nine hours later adjudged the defendant guilty of murder, ascertained the degree of her crime as second and recommended mercy.

If defendant's counsel concluded, when the statement concerning the juror was made, that she could not have a fair trial, they should have laid the matter immediately before the court and requested that the jury be discharged. They should not have taken the chances of a verdict in their favor and kept in reserve their motion for a new trial: McCorkle *v.* Binns, 5 Binney, 340; Eakman *v.* Sheaffer, 48 Pa. 176; Com. *v.* Razmus, 210 Pa. 609; Nemcof *v.* United States, 202 Fed. Repr. 911; Com. *v.* Beard, 48 Pa. Superior Ct. 319; Com. *v.* Clay, 56 Pa. Superior Ct. 427; Com. *v.* Deutsch, 72 Pa. Superior Ct. 298.

Statements or even affidavits made by jurors after trial in explanation of what influenced them in reaching a conclusion constitute no part of the record: Com. *v.* Alexander, 105 Pa. 1.

Such statements or affidavits after trial and the recording of the verdict would be fraught with most dangerous consequences: Smalley *v.* Morris, 157 Pa. 349.

Jurors have no right to pass upon the punishment of the accused. Their duty is to determine the question of guilt or innocence of the accused and leave the punishment to the court: Com. *v.* Bergdoll, 55 Pa. Superior Ct. 186.

Upon grounds of public policy, the courts have been universally agreed upon the rule that no affidavits, depositions or other sworn statements of a juror will be received to impeach a verdict, to explain it, to show on what ground

it was rendered or to show a mistake in it: 2 Thompson on Trials, § 2618; Black v. United States, 294 Fed. Repr. 828; 27 Ruling Case Law, 896.

Jurors who have been sworn or solemnly affirmed to give a verdict according to evidence come with bad grace into a tribunal of justice to prove their own dishonorable conduct and affix a stigma on their companions who may be unheard in their defence: Cluggage v. Swan, 4 Binney, 150; Holt v. United States, 218 U. S. 245; Com. v. Clay, 56 Pa. Superior Ct. 427.

The testimony of a juror is admissible to facts touching his own conduct or acts when separate from his fellows, or the acts or declarations of other persons with or to him, but inadmissible as to what transpired in the deliberations of the jury, acting as an organized body, presided over by their foreman and performing their official duty: Heffron v. Gallupe, 55 Maine, 563.

The question considered by the court in reviewing this case has been whether the defendant received a fair and impartial trial. It is the trial judge's opinion that the test of competency of a juror is not that he had not discussed the case; not that he may have had an impression, so often misstated as an opinion, but whether he could lay aside his impression or opinion and decide the case solely upon the evidence without bias, prejudice or sympathy.

The second question raised by defendant's counsel concerns the admission of what was offered as a dying declaration. This is answered by the testimony of the witness, Francis M. Clark, M. D. (pages 121 to 127, Notes of Testimony), who quoted the deceased as having stated that he thought he was "done for."

The third question raised, the refusal of the trial judge to charge on manslaughter, is controlled by Com. v. Morrison, 266 Pa. 223; Com. v. Newson, 277 Pa. 48; Com. v. Spardute, 278 Pa. 37; Com. v. Meleskie, 278 Pa. 383; Com. v. Johnson, 279 Pa. 40.

For the above reasons, the motion for a new trial is overruled.