## Gasparovic v. Reed.

*Trespass—Negligence—Automobiles—Passing at street corner—Collision with motorcycle—Verdict—Excessive verdict—Case for jury.*

1. Upon the trial of an action of trespass to recover damages for injuries arising out of a collision at a street intersection, the following facts appeared: Plaintiff came to the street intersection on his motorcycle at a rate of speed not unduly fast. His lights were lit and he sounded his horn. Two automobiles, one behind the other, approached the intersection on the street running at right angles to that upon which the plaintiff was riding. The defendant's was the second car, and he was driving. The first car stopped, whereupon the defendant, without pausing and without looking, drove around the front car on its left side and struck the plaintiff, pushing him thirty feet or more along the street, injuring him and demolishing his motorcycle: *Held*, that a verdict for plaintiff should be sustained.

2. A verdict which allows $250 for a motorcycle is not excessive, where the uncontradicted proof was that the motorcycle was worth $360 at the time.

3. An allowance of $10 per week for 182 weeks for loss of earnings is not excessive, where the uncontradicted proof is that plaintiff earned $28 per week.

4. Nor is $1000 an excessive award for pain and suffering, where the larger bone of the lower leg was broken and did not unite, thus necessitating a bone-grafting operation, as well as several minor operations, and where the testimony is that the flesh around the wound is cicatrized and liable all through plaintiff's life to cause future pain and suffering, and the testimony is further that the plaintiff will always be crippled and never again able to perform the labor he performed before his injury.

5. It was not error in such a case to refuse to direct a verdict for defendant.

*Practice, C. P.—Jurors—Notes of testimony—Deliberations of the jury—Secrecy—Depositions.*

6. It is against the policy of the law to allow the secrecy of the jury-room to be invaded. It is reprehensible for any juror to tell what transpired within the jury-room, or for any outside person to endeavor to ascertain it. A juror's testimony is inadmissible to prove what transpired in the deliberation of the jury.

7. There is no harm whatever in any juror's taking down figures as given by witnesses as part of the testimony in the case.

Trespass. Motion for new trial. C. P. Dauphin Co., March T., 1922, No. 219.

*Philip S. Moyer*, for plaintiff.

*Wendell Y. Blanning* and *W. W. Chisolm*, for defendant.

POTTER, P. J., 17th judicial district, specially presiding, April 18, 1924.— This is an action in trespass brought by the plaintiff against the defendant for the recovery of damages for personal injuries sustained by him through the alleged negligence of the defendant. The case was duly tried on Oct. 8 and 9, 1923, which resulted in a verdict for the plaintiff for the sum of $4351.50, which the jury, in their verdict, itemized as follows:

| | |
|---|---:|
| For doctor and hospital bills | $1281.50 |
| For motorcycle | 250.00 |
| Labor compensation for 182 weeks, at $10 per week | 1820.00 |
| To cover pain and body injury and opportunity to recover working condition | 1000.00 |
| | $4351.50 |

The defendant filed seven reasons for a new trial, which we will consider in their respective order, the first four of which can be disposed of together, which are as follows:

1. The verdict was against the weight of the evidence.
2. The verdict was against the evidence.

3. The damages awarded the plaintiff were excessive and out of all proportions of any loss he may have sustained.

4. The verdict was against the instructions of the court.

These four reasons are the usual stereotyped form of reasons filed for a new trial, and seem to be used when no other reason suggests itself, or to gain time. With all due deference to the worthy counsel who drew them, we think them wholly without merit.

This accident, by reason of which the plaintiff was injured, occurred on the evening of April 14, 1920, between 9.30 and 10 o'clock, in Steelton, at the place where Chambers Street joins Front Street.

The plaintiff, at the time of the accident, resided on Chambers Street, at No. 505, in Steelton. He was employed by the Bethlehem Steel Company on the night shift from 10.30 P. M. to 7 A. M., and on this evening was on his way from his residence to the place of his employment, riding a Henderson motorcycle. His route required him to come out Chambers Street to Front Street, then down Front Street towards Highspire. About the time the plaintiff was coming to the junction of Chambers Street with Front Street, two automobiles were traveling north on Front Street towards Harrisburg, the front car being driven by Mr. J. T. King, and the rear car being driven by the defendant. The King car contained Mr. King, Mrs. King, Mrs. Gilberg, Mrs. Daller and Mrs. Marlin, and the defendant's car contained himself only.

The defendant's car had followed the King car for three or four miles at a speed of approximately twenty miles an hour, and as these two cars approached the place where the accident occurred, they were about twenty to thirty feet apart, the King car being ahead.

The testimony tends to prove that the plaintiff, as he was coming out of Chambers Street on his motorcycle, had his lights lit and sounded his horn. The occupants of the King car, or some of them, heard him coming and Mr. King slowed up his car, drove to within about two feet of the curb and stopped. The plaintiff was not running unduly fast. The defendant then drew up to the left side of the King car and attempted to pass, when his car collided with the motorcycle of the plaintiff, pushed it along the street for a distance of thirty feet or more to and against a street car standing on its track, crushed the side car of the motorcycle against the street car, causing it to be crushed against the motorcycle, thus crushing the left leg of the plaintiff between the two, by reason of which he sustained a compound comminuted fracture of the left lower leg. The motorcycle and its side car were demolished.

We left it to the jury to say who was at fault in causing this accident, and they, by their verdict, have said it was the defendant, that his negligence was the cause of the plaintiff's injuries, and that he must pay for them.

When the King car, just ahead of the defendant, slowed up and stopped, this should have been notice to him that there was cause of some sort for him also to stop, and he should not have attempted to pass the King car till he had satisfied himself that he had a clear way. Had he observed this admonition, no accident could have happened, and this plaintiff would not be crippled for life, at least not on this account. But instead of pausing or stopping to ascertain whether or not he had a clear way ahead of the King car, he ran around the King car without looking, with such a rate of speed as to push the vehicle of the plaintiff at least thirty feet along on the street, and then completely wreck it by colliding it with a street car. In order to do this, we feel sure he was traveling at a greater rate of speed than fifteen miles an hour, the rate of speed he says he was traveling. Under no circumstances

should this defendant have attempted to pass the King car, or any other one, till he had a clear vision ahead and till he could clearly see he had a clear way.

The jury have found the defendant to be at fault, and we are clearly of the opinion that their finding in this respect was correct. In fact, we fail to see how they could have arrived at any other conclusion from the evidence produced upon the trial of the case. Therefore, the verdict is in full harmony with the evidence in this regard as well as with the instructions of the court, and the first, second and fourth reasons are dismissed.

Nor do we think the verdict was excessive. In ariving at their verdict the jury took into consideration the bills of the physicians who operated upon and attended the plaintiff, as well as the bill of the hospital where he was treated for a period of several years, of $1281.50, which bills are not in any way contradicted. These are legitimate items of recovery, and we have no evidence tending to show that the services of the doctors or the attendance in the hospital were in any way charitably rendered.

The jury also awarded the plaintiff the sum of $250 for his demolished motorcycle. The uncontradicted proof was that at the time of the accident the motorcycle was worth $360, or $110 more than the jury allowed for it in their verdict. Surely no one can complain of this item.

The jury allowed the plaintiff for 182 weeks, at $10 per week, being the time he has been unable to work since his injury, or $1820. If the defendant was the cause of the plaintiff's injuries, thus causing him to become disabled to such an extent that he could not work at all, and they have so found, surely he would be liable for the earnings of the plaintiff from the time of his injury during the time of his total disability, which was proven to be up to the time of the trial of this case. They have allowed him $10 per week, or approximately $40 a month. This is very low compensation during these times of high wages, and especially so when the uncontradicted proof is that he was earning 50 cents an hour for eight hours a day, or $4 a day, or $28 per week, or $112 a month of twenty-eight days. We can see no cause of complaint about this item.

And now we come to the item of $1000 allowed for pain and suffering. That is what this item means, although not couched exactly in this language. Who would pass through what this plaintiff has passed, and who would endure the pain and the surgical operations he has endured for $1000? No one would unless they had to. The larger bone of the lower leg did not unite, thus necessitating a bone-grafting operation, as well as several other minor operations. The flesh around this wound is cicatrized, is hard, does not have the proper circulation and is liable all through this man's life to break down and suppurate, thus causing future pain and suffering. The jury has made no allowance in their verdict for this, nor have they made any allowance for the loss in earning capacity during this plaintiff's life expectancy. These are two perfectly legitimate items that could properly have entered into the verdict, for we have the testimony of two physicians who attended him that he will always be crippled and can never again perform the labor he performed before his injury.

So that by a matter of simple calculation we find this verdict could very properly have been far larger than it is. It is, therefore, not excessive, and the third reason is dismissed.

The fifth reason is as follows: "The court erred in refusing to affirm the defendant's second point, which point was as follows, 'Under all the evidence, the verdict must be for the defendant,' and the answer of the court was as follows, 'Refused.'"

Gasparovic v. Reed.

In the light of the evidence produced upon the trial and our disposition of the four preceding reasons, we can very safely say that had we affirmed this point, we could clearly see where we would have erred, but, having refused the point, we fail to see any error. We thought we were correct in refusing the point on the trial, and we are of the same opinion yet; therefore, this reason is dismissed.

The sixth reason is as follows: "Counsel for the defendant are informed and believe and expect to be able to prove that one of the jurors made copious notes of testimony in favor of the plaintiff during the trial of the case, and used said notes in the jury-room in discussing the case with the other jurors. Counsel for the defendant do not aver that the said juror was wittingly guilty of any improper conduct, and believe the juror was actuated merely by a desire to give what he believed to be proper consideration to the case."

This is the first time we have ever heard of exactly this point being raised in our modern practice. Just how it became known outside of the twelve members of the jury that any notes taken during the trial by a juror were used in the jury-room during the deliberation on the case by the jury, we are at a loss to say. Just what transpires in the jury-room during the consideration of a case by the jury is supposed to be safely locked within the breast of each juror. The public are not supposed to know by what system of reasoning a jury arrives at a verdict. It is reprehensible for any juror to tell what transpired within the jury-room, or for any outside persons to endeavor to ascertain it. And still, in this case, we have the depositions of three of the jurors who sat on this case, relative to whether or not they arrived at their verdict by the use of notes taken by them during the trial. These jurors could have, and should have, refused to testify. A juror's testimony is inadmissible as to what transpires in the deliberation of the jury, acting as an organized body in the performance of its duty: Com. v. Bergdoll, 55 Pa. Superior Ct. 186, 194; Cluggage v. Swan, 4 Binney, 150.

And we can safely say that it is against the policy of the law to allow the secrecy of the jury-room to be invaded: White v. White, 5 Rawle, 61; Smalley v. Morris, 157 Pa. 349; Stull v. Stull, 197 Pa. 243, and other kindred cases.

This doctrine is backed up by some of the best authorities in the land, and, therefore, applying it to the case at bar, these depositions of these three jurors are wholly inadmissible and ought not to be considered by the court. In fact, they will not be considered in any way tending to direct our disposition of the questions before us.

We cannot refrain from saying that the notes taken by the jurors were only figures given by several of the witnesses regarding the sums this plaintiff owed for doctor bills, hospital bills and the cash value of his motorcycle before the accident. We fail to see any harm whatever in any juror taking these figures as given by the witnesses. In fact, it would give them a clearer basis for consideration in the jury-room with not so much blind guessing as we at times have by juries in making up their verdicts. The fact that these three jurors took these figures as given by the witnesses would not in the least influence them as to whether their verdict would be for the plaintiff or for the defendant. If their verdict would be for the defendant, then these figures would not, and could not, be used; but if, after mature deliberation, their verdict was for the plaintiff, then these figures would go mightily in giving them a true basis upon which to compute their verdict. Therefore, the 6th reason is dismissed.

The seventh reason is as follows: "The form of the verdict is not such as

to end the litigation between the parties arising from the cause of action on which suit was brought. The finding set forth that a portion of the verdict is to date."

As regards this reason, we can only say that the plaintiff has declared for damages for his injuries heretofore and hereafter. The case was tried on that theory, and the court so charged the jury. Their verdict as rendered, once and for all time, ends and settles any and all claims this plaintiff may or might have had against this defendant by reason of his injuries sustained by reason of the accident in question. The plaintiff cannot bring any other subsequent suit against this defendant for the cause of action as contained in his declaration. Therefore, this reason is dismissed.

As to granting new trials, before concluding, we cannot refrain from quoting from Judge Endlich's opinion in the case of Lotz v. Reading Iron Co., 10 Pa. C. C. Reps. 497, where he says: In this "class of actions a verdict will not be set aside as contrary to the evidence unless its contrary preponderance be clear and decisive; so clear and convincing that it leaves no reasonable excuse for doubt in an intelligent and disinterested mind; that the jury should not have hesitated to accept it; and that the court cannot discover how, upon any proper and reasonable construction of the evidence, the jury could have rendered their verdict; or it be obvious that the verdict cannot be sustained without disregarding established rules and the apparent justice of the case; or that the jury must have misunderstood or totally disregarded the instructions of the court upon the evidence, or neglected to consider the facts and overlooked prominent and essential points in the same."

Measured by this standard, we fail to see any ground whatever on which we could set aside this verdict and grant a new trial.

And now, to wit, April 18, 1924, the reasons for a new trial are all dismissed, the rule is discharged, and it is directed that judgment be entered on the verdict as rendered, upon the payment of the jury fee and the fulfillment of any requirements of the rules of the Dauphin County courts.

April 18, 1924, an exception is noted for the defendant and a bill is sealed.

From Charles P. Ulrich, Selins Grove, Pa.